UNITED STATES, Appellee

v.

OLLIE TAYLOR, JR., Private–1, U. S. Army, Appellant

2 USCMA 389, 9 CMR 19

Lt Col James C. Hamilton, U. S. Army, and 1st Lt Richard B. Dempsey, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Robert A. Forman, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Accused was tried by general court-martial and found guilty of desertion with intent to shirk important service in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. He was sentenced to a dishonorable discharge, forfeiture of all pay and allowances and confinement at hard labor for five years. The convening authority approved the finding and sentence, but suspended the dishonorable discharge until accused's release from confinement or completion of final appellate review, whichever is the later date. A board of review in the office of The Judge Advocate General, United States Army, affirmed and we granted accused's petition for review in order to consider the single question of whether the evidence is sufficient to support the finding of guilty.

To dispose of the question requires an analysis of the evidence to determine if the court-martial could find that the essential elements of the offense were established beyond a reasonable doubt. The Manual states that this offense requires proof that accused left his unit without authorization; that at that time or sometime during his absence he formed an intent to shirk important service; and that his absence was of the duration alleged. The record consists almost entirely of documentary evidence and reveals that on June 30, 1951, the accused was a member of Company D, 1st Battalion, 502d Airborne Infantry Regiment, 101st Airborne Division, then located at Camp Breckinridge, Kentucky. On that date Special Orders No. 165, issued by the 101st Airborne Division at Camp Breckinridge, transferred the accused to the Personnel Center, Camp Stoneman, Pittsburg, California, for July shipment to the Far East Command. The accused had completed the fourteen weeks' training and he and the others listed in the orders were to leave Camp Breckinridge on July 13, 1951. All personnel listed in the orders were to have nine days' delay en route to visit the places indicated by their names and they were to report at Camp Stoneman prior to 12 o'clock midnight on July 26, 1951. At the time the document, Special Orders, was offered in evidence the law officer announced to the court that it would take judicial notice of Technical Manual 12–250, which provided that all individuals named in orders must be furnished a copy thereof.

In addition, the prosecution introduced into evidence an extract copy of a morning report of the 101st Airborne Division showing that on July 13, 1951, those individuals named in the Special Orders were transferred from duty to detached service until July 26, 1951, pending transfer to Camp Stoneman. The extract copy also shows that the same individuals were relieved from detached service and were reassigned to Camp Stoneman Personnel Center ef-

fective July 26, 1951. An extract copy of another morning report shows that on July 26, 1951, the accused was reported as absent without leave from en route to join and on August 24 he was dropped from the rolls. The last important exhibit is another extract copy of a morning report which shows that accused was returned to military control at Fort McClellan, Alabama, on December 1, 1951.

There being no dispute in the evidence, the unauthorized absence of accused during the period between July 26 and December 1, 1951, is conclusively established by the morning report extracts. The only other elements requiring the necessary proof to convict are (1) that the service to which accused had been assigned was important, and (2) that he went absent because he had knowledge of such assignment and wished to avoid it.

We can, without difficulty, dispose of the contention that all duty in the Far East Command is not important service and that shipment to a port of embarkation for overseas assignment is too far removed from the combat area to be considered as encompassed within the phrase. The Manual for Courts-Martial, United States, 1951, paragraph 164a, page 311, effective at the time the offense herein occurred, provides as follows:

> "The 'hazardous duty' or 'important service' may include such service as duty in a combat or other dangerous area; *embarkation for foreign duty or duty beyond the continental limits of the United States or for sea duty; movement to a port of embarkation for that purpose;* entrainment for duty on the border or coast in time of war or threatened invasion or other disturbances; strike or riot duty; or employment in aid of the civil power in, for example, protecting property, or quelling or preventing disorder in times of great public disaster. Such services as drill, target practice, maneuvers, and practice marches will not ordinarily be regarded as included." [Emphasis supplied]

Accused has cited several previous military cases in which it has been held that mere transfer to a port of embarkation for shipment overseas was not considered important service within the meaning of this offense. However, a review of those cases indicates that most of them were decided under the 1928 Manual before the rule announced in the present Manual was in effect. In United States v. Shull (No. 45), 2 CMR 83, decided February 18, 1952, we suggested a contrary rule in view of the specific provisions quoted above. We stated in that case:

> ". . . The specification here before us treats of a particular sort of service, and one which under any permissible interpretation of the term is important. Certainly—and this is amply supported by the military cases—foreign service during time of war or under emergency conditions and in or near a combat area is important service, and this is precisely what our specification alleges the accused intended to shirk. . . ."

Again, in United States v. Hemp (No. 290), 3 CMR 14, decided April 8, 1952, we said:

> ". . . the very fact that he left while on orders to report to a post outside the continental United States brings into prominence an intent to shirk important service. It is well established in military law that absence without leave with knowledge of immediate overseas movement is sufficient from which a court may find desertion predicated on the intent to shirk important service. See par 146a, Manual for Courts-Martial, U. S. Air Force, 1949, and Article 164a (2), Manual for Courts-Martial, 1951. A fortiori, going absent while en route to an overseas base would furnish the predicate for desertion under that arm of the offense."

From these cases it is apparent that the contention must, of necessity, be overruled.

The remaining element to be established is whether the accused had knowledge of the fact that he was to be shipped to the Far East Command and

that his absence was to escape this assignment. We have previously stated in many decisions that intent is a state of mind and, in the absence of express declarations by the person involved, it must be proved by the facts and circumstances from which an inference of intent may be drawn. We ■ believe the facts and circumstances shown in the present record were sufficient to permit the court-martial to find the requisite intent. It is not essential ■ that the Government prove the intent was formed at the inception of the absence. All that is necessary is that the testimony disclose facts and circumstances sufficient to form a predicate for finding that accused knew of his transfer and intended to remain absent until such time as would be necessary to escape shipment to the Far East Command.

Appellate defense counsel has cited several previous military cases which have held that a person subject to the provisions of a special order is bound by its terms only if they are made known to him. See United States v. Gerber, 10 BR 107, 114. We need not quarrel with this principle of law because the record in the instant case contains more evidence of knowledge than is found in those ■ cases. First, the court was specifically requested to take judicial notice of the regulations requiring that each person named in the order be furnished a copy thereof. The Manual specifically provides that judicial notice may be taken of the "Department of Defense, of the departments . . . thereunder and . . . the regulations and official publications pertaining thereto or issued thereby." Manual for Courts-Martial, United States, 1951, paragraph 147a, page 274. Second, the accused remained at Camp Breckinridge until July 13, two weeks after the orders were issued. There was ample time for delivery of the orders and compliance with the regulations and no suggestion of ■ non-compliance. Third, there is a rebuttable presumption that Army officials perform their administrative affairs in accordance with the regulations and this presumption is unrebutted. See United States v. Masusock, (No. 15), 1 CMR 32, decided November 9, 1951. Fourth, the accused departed from Camp Breckinridge on the date of departure set forth in the order and there is no other fact or circumstance which would justify his leaving on that date. Fifth, he had finished his fourteen weeks' training and was available for reassignment. Sixth, he was authorized a delay en route and he must have furnished military authorities information where he could be reached during this time as the orders show his address while on leave. Seventh, there are many preparatory details requiring performance before leaving on a shipment, such as completion of service records, turning in of property, obtaining clothing, meal tickets, transportation and clearing the post. It would be unbelievable that an enlisted person could be present with his unit for two weeks prior to his shipment date and not be processed for departure.

When consideration is given to the facts established by the record and the fair inferences that any reasonable person would be permitted to indulge in, it becomes apparent that there is ample evidence, direct and circumstantial, to sustain the findings of the court-martial.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.