UNITED STATES, Appellee

v

EDGAR A. SHENEFIELD, Specialist Four, U. S. Army, Appellant

18 USCMA 453, 40 CMR 165

No. 21,777

July 18, 1969

*Captain Lee A. Rau* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major James M. Yelton, Jr.*

*Captain Benjamin G. Porter* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

Opinion of the Court

FERGUSON, Judge:

The accused was convicted of three specifications of larceny of Government property, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, and sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for two years. The convening authority disapproved one of the specifications, reduced the period of confinement to sixteen months, and approved the remainder of the findings and sentence. The board of review affirmed without change. We granted review to determine whether:

The law officer's instruction that copies of pay vouchers missing from accused's financial data records folder should be considered as supporting an inference of the intent to permanently defraud the United States was prejudicially erroneous.

Essentially the accused was charged with receipt of payments of money, on two occasions, to which he was not entitled. The vouchers relative to these payments were introduced into evidence. In a pretrial statement, and at trial, the accused acknowledged receipt of these monies but stated that he believed he was entitled to them, as back pay, by reason of the fact that he had previously been court-martialed and, although only partial forfeitures were adjudged, his pay and allowances had been stopped for a period of time.

The evidence directly related to the granted issue reflects that when pay vouchers are manually prepared, as in this case, five copies are made. Under existing regulations either the number two or the number five copy should be located in the serviceman's financial data records folder for a period of some two years. In this case the appellant's folder contained no such evidence of the questioned payments. The serviceman is not the custodian of his folder and does not, under current regulations, have access to it. There was testimony which tended to show that during the pertinent period, the division finance office was operating without sufficient numbers of trained personnel and that, due to the temporary departure of various units, normal procedures were not uniformly observed and numerous errors were made.

The law officer, when instructing the members of the court on the meaning of circumstantial evidence, as related to the element of intent, and its place in their deliberations, delineated for them circumstances which they may consider "as supporting the inference of the existence of the intent of the accused at the time he accepted payment of monies in question, permanently to defraud the United States the use and benefit thereof." Included with this evidence was the testimony

of a prosecution witness that *"no two or five copy of pay vouchers were present in the accused's financial data records folder after the payment was made."* (Emphasis supplied.)

The defense contends that the law officer erred to the substantial prejudice of the accused by including the above-quoted information in this portion of his instructions on circumstantial evidence. Since, according to counsel, there was no evidence that the accused was responsible for the absence of these copies of the pay voucher from his folder, the instruction afforded the evidence an artificial and fictional effect on the issue of intent. Defense counsel also assert that it is clear that if the custodians of the financial data record folders properly discharged their official responsibilities, the accused did not have the means to effect the removal of the vouchers from his folder and there is no basis in the record of trial for drawing a contrary conclusion. Absent any evidence of the accused's complicity in their absence, there is no basis for drawing the further inference that the accused intended to defraud the Government.

The Government acknowledges that while there is no evidence that the appellant personally removed the copies of the pay vouchers from his financial records, the fact that only one with a good deal of knowledge of the financial procedure would know how to accomplish this event points to the possibility of collusion with someone working in the finance office. This possibility, the Government avers, is heightened by the fact that the documentation relating to these overpayments was the only thing missing from the file. Assuming error in the instructions, the Government asserts, the accused was defended by a competent lawyer who made no objection and, in any event, the instructions taken as a whole were properly tailored to the evidence and, thus, did not prejudice the appellant.

It is clear, from the evidence of record, that the accused's financial data records folder was at all times in the possession of the Government, and that,

454

under existing regulations, the accused did not personally have access to it. Since there is a rebuttable presumption that military officials perform their administrative affairs in accordance with regulations (United States v Taylor, 2 USCMA 389, 9 CMR 19), and in this case the presumption is unrebutted (United States v Taylor, supra; United States v Masusock, 1 USCMA 32, 1 CMR 32), it can be presumed, as the Government acknowledged, that the accused did not personally remove the missing documents. We cannot, however, accept as valid, as the Government urges, a presumption that the accused secured their removal through the services of someone in the pay section. While it is true, as the Government points out, the papers pertaining to these payments are the only documentation missing and the officer in charge of the pay team testified that in his opinion it was not likely that someone not familiar with pay matters could cause the destruction or disappearance of these papers without the assistance of someone in the Finance Office, this is not sufficient evidence on which to base a presumption of this nature. There is no evidence of collusion and "[t]here is and can be no presumption that public officers have violated their legal duties." United States v Tobita, 3 USCMA 267, 270, 12 CMR 23.

In the case at bar we find no evidence as to why the number two or number five copy for these particular payments was not found in the accused's financial pay records folder—only that they are missing. The accused had no responsibility for their preparation or for placing or maintaining them in the folder. Likewise, the folder was not at any time in his care, custody or control. Given this state of the record, we find the situation not unlike that in United States v Spain, 17 USCMA 347, 38 CMR 145, where we held it not unreasonable to conclude that similar duplicate pay forms, also missing, were either not prepared, prepared and concealed or destroyed, or that the forms were lost in handling. The presumption that this accused was in any manner responsible for the fact that the forms were not in his folder cannot be sustained. United States v Spain, supra. This being the case, the fact of the missing documentation could not possibly have any bearing on the issue of the intent to permanently defraud the United States of the money involved.

We hold then that the law officer erred when he told the court that it may consider the fact of the missing vouchers as supporting the inference that the accused intended to defraud. The accused admitted receiving the payments and claimed he believed he was entitled to them. Since the issue of his intent in accepting the money was vital to the case and the inference was not justified on the basis of the evidence, prejudice is apparent. As the Supreme Court said in Morissette v United States, 342 US 246, 274, 96 L Ed 288, 306, 72 S Ct 240 (1952):

". . . [T]he trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act. It often is tempting to cast in terms of a 'presumption' a conclusion which a court thinks probable from given facts. The Supreme Court of Florida, for example, in a larceny case, from selected circumstances which are present in this case, has declared a presumption of exactly opposite effect from the one announced by the trial court here: '. . . But where the taking is open and there is no subsequent attempt to conceal the property, and no denial, but an avowal, of the taking a strong presumption arises that there was no felonious intent, which must be repelled by clear and convincing evidence before a conviction is authorized. . . .' Kemp v State, 146 Fla 101, 104, 200 So 368, 369.

"We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which

455

the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. Even congressional power to facilitate convictions by substituting presumptions for proof is not without limit. Tot v United States, 319 US 463, 87 L Ed 1519, 63 S Ct 1241."

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge QUINN and Judge DARDEN concur.