**UNITED STATES, Appellee,**

v.

**Private First Class Dean J. MUNT, SSN 558–80–3454, United States Army, Appellant.**

**CM 431981.**

U. S. Army Court of Military Review.

31 Aug. 1977.

Captain Robert H. Herring, Jr., JAGC, argued the cause for appellant. With him on the brief were Lieutenant Colonel John R. Thornock, JAGC, and Captain D. David Hostler, JAGC.

Captain Gay M. Holmes, JAGC, argued the cause for appellee. With her on the brief were Colonel Thomas H. Davis, JAGC, Major John T. Sherwood, Jr., JAGC, and Major Steven M. Werner, JAGC.

Before JONES, FULTON and FELDER, Appellate Military Judges.

### . OPINION OF THE COURT ON FURTHER REVIEW

JONES, Senior Judge:

This case is before this Court upon remand from the United States Court of Military Appeals. Appellant pleaded guilty to 14 offenses involving robbery, larceny, wrongful appropriation, kidnapping, and arson in violation of Article 122, 121, 134 and 126, Uniform Code of Military Justice, 10 U.S.C. §§ 922, 921, 934 and 926. He was sentenced to a dishonorable discharge, total forfeitures, reduction to Private E–1, and confinement at hard labor for 40 years. The convening authority reduced the period of confinement to ten years pursuant to a pretrial agreement and approved the re-mainder of the sentence. This Court affirmed.

On petition to the United States Court of Military Appeals, the appellant for the first time raised the question of a coerced plea through misrepresentations by government agents. That Court remanded the case to this Court "to resolve the inconsistencies in the affidavits . . . and thereafter to determine the providency issue." Pursuant to that directive this Court ordered a limited evidentiary hearing. That hearing has been completed and the record is before us for further review.

The appellant and three companions were apprehended by the German police for the robbery of a German gas station. They were caught a few minutes after the robbery with the money, masks, and a weapon still in their possession. To characterize the case against them as strong would be an understatement. The incident received considerable notoriety in the German press, especially because the accused were members of a military police unit.

Under the Status of Forces Agreement, the German authorities had primary jurisdiction over the offense. The local prosecutor indicated his intention to recall the general waiver of jurisdiction applicable under agreements supplemental to the NATO SOFA. It is United States policy to avoid a recall of the waiver of German jurisdiction. Toward that end, representatives of the international affairs section of the staff judge advocate office immediately met with the German prosecutor to discuss the case.

Army criminal investigators (CID) on the case noted a similarity of operation between the gas station robbery and an earlier robbery (seeking drugs) of medical personnel in the emergency room of a nearby Army hospital. In both instances stolen post exchange vehicles were used, masks were worn, and a gas pistol brandished. The investigators felt that two or more of the four soldiers in the gas station robbery were involved in the hospital incident. They had no direct evidence of this, however.

Military authorities concluded that their best chance of exercising jurisdiction in the gas station case would be if they could establish that the soldiers were also involved in the hospital robbery, an incident over which the United States exercised primary jurisdiction. Then they could argue that for judicial economy, the Army should try the appellant and others for all offenses. Crucial to this argument would be their ability to convince the German prosecutor of the strength of their case on the hospital incident. The most obvious way to do this would be to have a confession from one or more of the perpetrators.

Shortly after the four suspects were released to Army control, they were given military counsel. The appellant conferred with his counsel and then declined to give a statement to the criminal investigators. Appellant's counsel spoke with the chiefs of the international affairs and military justice sections of the staff judge advocate office concerning the case and had the chief of international affairs explain to the appellant the jurisdictional situation.

From his inquiry, appellant's counsel learned of the strength of the case against appellant, of the German authorities' professed intention to exercise jurisdiction, and of the necessity for a strong case on the other charges if the military hoped to convince the Germans not to exercise jurisdiction. Counsel also was aware that the chief of the military justice section had indicated that the first suspect to confess to the hospital incident and agree to testify could obtain a pretrial agreement limiting confinement for all offenses to ten years. Thus there was an incentive to confess and to do so quickly if the appellant wanted to avoid the German criminal system and avail himself of a relatively advantageous pretrial agreement. The next day and again six days later the appellant, in the presence of his counsel, made statements confessing to his participation in the hospital incident.[1]

Appellant asserted by affidavit (and subsequently in the evidentiary hearing) that he was advised by the chief, international affairs (Captain Crow) that the maximum punishment in the German court for the gas station robbery was 20 years, when in fact it was 15; that the German authorities would have to be assured of a conviction before they would release jurisdiction; and that the only way to make that assurance was for the appellant to confess to the hospital incident. The appellant also maintained that military authorities incorrectly depicted the conditions of German jails and the treatment American soldiers received therein; that the CID promised clemency for making statements; and that he was misled into believing, even at the time of his trial, that the German authorities had not waived jurisdiction and could still try him if he did not plead guilty.

In a counter affidavit, Captain Crow generally disputed the contentions of the appellant as to the advice he gave him. Captain Crow stated that he correctly advised appellant that the maximum confinement for robbery under German law was 15 years; that he told him of the mitigating factors that could be considered; and that he stated the United States would be unable to obtain a waiver of jurisdiction unless they could prosecute appellant for the additional offenses over which German authorities did not have primary jurisdiction. The latter differs considerably from appellant's allegation that he was told a conviction must be assured to obtain a waiver. It was to resolve these conflicts and determine the providency issue that the case was returned to us.

■ The decision to plead guilty rarely, if ever, is made in an atmosphere of detached neutrality. Many considerations are likely to bear on the decision. Even the

---

1. Any thought that appellant may have confessed to offenses he did not commit to avoid a German trial and obtain a favorable pretrial agreement was dispelled by the detailed nature of the statements. The statements contained facts that would be known only by a participant in the incident. Those facts were corroborated by the victims, by an accomplice of the appellant, and by a fellow soldier to whom appellant bragged about the incident. Appellant does not maintain that he did not commit the offense.

most compelling considerations, however, do not amount to coercion—so long as they are not falsely induced or overbearingly promoted. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The appellant regarded a German trial and the prospect of German confinement as unsatisfactory. Experience indicates that this is not an uncommon view among American soldiers stationed in Germany. Whatever may be the basis for such view, one fact is clear: confinement as a result of trial by court-martial is served among English-speaking prisoners at a central location in the United States which relatives and friends presumably find easier to visit than visiting an overseas prison. There are no indications that convictions are any less likely under the civil law system used in Germany than under the American military justice system, and there is no sixth amendment right to a speedy trial, much less a *Burton* rule [2] in the German criminal court system.

■ American authorities, pursuing a policy dictated by the Congress, were similarly interested in avoiding a German trial. While it was made known that a negotiated plea was possible, and on apparently favorable terms, this does not amount to an

unlawful inducement to plead guilty. *Brady v. United States, supra.*

■ The military judge came to a plausible conclusion on the dispute over the advice as to the maximum confinement for robbery under German law. The judge determined that although Captain Crow stated the maximum was 15 years (Captain Crow had specifically researched it beforehand) appellant's counsel (thinking of the maximum under military law) and the appellant himself thought he said 20 years. It is inconceivable however, that the defense counsel persisted in this belief for six weeks until the trial.

Regarding the waiver of jurisdiction, we do not believe the appellant when he states that he did not know at the time of trial that the Germans had waived jurisdiction.[3] Not only do we think appellant's counsel advised him of this fact but we believe appellant, as a pretrial prisoner, was aware from his association and discussion with fellow inmates of the basic rules regarding waiver and jurisdiction.

Appellant's entire course of conduct was guided by his goal of staying out of the foreign court and this dictated his confessions.[4] This self-induced desire to avoid a

2. *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

3. Under the NATO Status of Forces Agreement, the German authorities had 21 days from receipt of notice of an offense over which they exercised primary jurisdiction to decide whether to recall their general waiver of jurisdiction. As it was extremely difficult for them to obtain sufficient information on which to make a decision within that period, and in order to avoid the unnecessary recall of waiver, an informal agreement was established between the German prosecutor and the American military officials to delay the official notification of an offense. This procedure was apparently not in contravention of the NATO SOFA and it inured primarily to the benefit of American servicemen by reducing the number of trials in German courts. In the instant case the delay in notification also gave military criminal investigators an opportunity to pursue their inquiry into the hospital incident.

The German prosecutor orally waived jurisdiction, permitting the court-martial to proceed, and subsequently submitted a written decision not to recall jurisdiction.

4. Appellant's individual defense counsel at the limited hearing would not concede that the confessions were voluntary, but neither would he say they were involuntary. He stated: "Your Honor, we're contending that the plea was coerced, not the confession." It is not difficult to understand counsel's position for appellant's trial defense counsel had been with appellant offering advice and assistance at every stage of the proceedings. The trial defense counsel even acted as a witness to one of the confessions. Thus, unless appellant was willing to attack the competence of that counsel's advice, the confessions must be considered voluntary. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

The military judge recognized that implicit in appellant's contention was an allegation that his trial defense counsel was inadequate. To that end the military judge tried to inquire into the conversations between appellant and his trial defense counsel as to what advice appellant was given and what appellant understood about the waiver, maximum punishment, and jail conditions. Appellant and his two new counsel for the limited hearing were adamant

German trial does not invalidate his confessions and even though the military authorities may have contributed to his anxiety, such governmental action was not an improper inducement. *United States v. Carmichael,* 21 U.S.C.M.A. 530, 45 C.M.R. 304 (1972). At the trial when appellant could have pleaded not guilty, contested the admissibility of the confessions, and put the prosecution to its proof, he chose to plead guilty and retain the benefits of his pretrial agreement. Such motivation to "accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities . . ." does not amount to coercion. *Brady v. United States, supra.*

The military judge conducted an extensive inquiry and made detailed findings of fact. He specifically found no unlawful inducement or coercion and no improvident plea. His findings are supported by the evidence. We are convinced beyond a reasonable doubt that the appellant's statements and his plea of guilty were the product of his own free will and therefore provident.

The findings and sentence are affirmed.

Judge FULTON and Judge FELDER concur.

in stating they were not raising the adequacy question and they were thus not waiving the attorney-client privilege. This effectively thwarted the military judge in his effort to develop the facts. We can only conclude that those facts would have been adverse to the appellant. That conclusion accords with common experience because it is unrealistic to think that the trial defense counsel did not during the entire six weeks before trial confirm the maximum punishment and properly advise the appellant; that he did not inquire into actual conditions of German jails and advise appellant; or that he did not know at the time of trial of the waiver of jurisdiction and so advise appellant.