UNITED STATES

v.

Otis D. ALLEN, III, Storekeeper Third
Class, U. S. Coast Guard.

CGCM 9954.
Docket No. 815.

U. S. Coast Guard Court of
Military Review.

16 Nov. 1978.

Military Judge: CAPT John H. Byrd, Jr., Trial Counsel: LT Leo M. Kenney, Defense Counsel: LCDR John A. Bastek, Appellate Defense Counsel: LT Jon W. Peterson, Appellate Government Counsel: LCDR Larry F. Wheatley.

## OPINION

MORGAN, Chief Judge:

The accused Storekeeper Third Class Otis D. Allen, III, U.S. Coast Guard, was tried by general court-martial at the offices of Commander, First Coast Guard District, Boston, Massachusetts, 1 through 3 February 1978. Storekeeper Third Class Allen pleaded guilty to and was convicted of various violations of Articles 81, 121, 130, 134, 92 and 111 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, 930, 934, 892 and 911. The principal offenses arose from a conspiracy between the accused and some civilians to steal marijuana which had been seized by the Drug Enforcement Agency and was stored in a locked truck under the surveillance of a Coast Guard gate sentry and a roving patrol on the Coast Guard Base, South Portland, Maine. Having bribed the gate guard and the roving patrol, Storekeeper Third Class Allen and his co-conspirators broke and entered the truck at about 0200 hours the morning of 21 May 1977 and stole two bales of marijuana having a street value of about $50,000. Store-

keeper Third Class Allen received eight pounds of marijuana and $5,000 as his share of the proceeds.

The general court-martial members sentenced Storekeeper Third Class Allen to be reduced to pay grade E–1, to forfeit all pay and allowances for three months and to be confined at hard labor for three months. The record of trial was summarized. In his action of 17 April 1978, the convening authority approved only so much of the sentence as provided for reduction to pay grade E–1, confinement at hard labor for three months and forfeiture of two-thirds pay per month for three months thus bringing the sentence within the limits for which a summarized record of trial by general courts-martial is authorized by paragraph 82(b), Manual for Courts-Martial, 1969 (Rev.). Exercising his authority under Article 69, Uniform Code of Military Justice, 10 U.S.C. § 869, the Chief Counsel referred the record of trial to this Court for review pursuant to Article 66, 10 U.S.C. § 866.

Appellant urges that his conviction must be reversed for failure of the record of trial to affirmatively demonstrate that the trial judge complied fully with the mandate of the Court of Military Appeals in *U. S. v. Green*, 1 M.J. 453 (C.M.A. 1976) and *U. S. v. King*, 3 M.J. 458 (C.M.A. 1977). The guilty pleas in the case were entered in furtherance of a pretrial agreement which had been negotiated with the convening authority. The summary of the trial judge's inquiry to satisfy himself that the accused's guilty pleas were providently entered as required by *U. S. v. Care*, 19 U.S.C.M.A. 535, 40 C.M.R. 247 (1969) includes only the following reference to the pretrial agreement:

"The military judge ascertained from the accused that he understood the terms of the Pretrial Agreement, that his plea of guilty was not prompted by the military judge's denial of the defense's motions, that his plea of guilty was not solely a matter of tactics and with the hope of securing leniency, and that the accused believed in his own mind that he was guilty." (R 7–8).

It is true that the record does not reveal the extent of the judge's inquiry respecting the accused's understanding of the various provisions of the pretrial agreement; that the agreement encompassed all the understandings between the accused and the Convening Authority; a statement of the judge's understanding of the terms of the agreement; or any indication that inquiry was made of counsel for each side to determine whether their understanding of the terms of the agreement comported with that of the trial judge, all of which are apparently required by *U. S. v. Green* and *U. S. v. King, supra.* Neither does it show that the required inquiries were not made.

There is a presumption that judicial proceedings were conducted regularly and in accordance with applicable law. Thus the rule is stated in 29 Am.Jur.2d 211:

"Under the law of evidence, it is presumed, unless the contrary appears, that judicial acts and duties have been duly and regularly performed, the presumption of regularity attending the acts of public officers being applicable to judges and courts and their officers, and to justices of the peace. Thus, on the review of a lower court decision by a higher court, all reasonable presumptions and intendments consistent with the record will be indulged in favor of the validity of the judgment or decision under review, and of the regularity and legality of the proceedings below; every presumption consistent with the record is in favor of the correctness of the decision of the trial court. * * * "

To the same effect see, *Taylor v. State,* 59 Ga.App. 1, 200 S.E. 237 (1938) where it was said:

"It is a familiar maxim that in the absence of evidence to the contrary, the regularity and legality of the proceedings in a court of record will be presumed. * * * Thus, in the trial of one under an indictment for subornation of perjury, where it is shown that the alleged perjurer was sworn and testified, it will be presumed that a lawful oath was administered to him, in the absence of proof to the contrary."

Finally, the Supreme Court of the United States said in *Bute v. Illinois,* 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948):

"Especially in a self-governing state and nation, governmental stability depends upon the giving of full faith and credit in form, substance and spirit to public acts, records and judicial proceedings not only among the states but among individuals and between *their State and Federal* Governments.

"Although the record discloses no affirmative basis for invalidating the sentence, it is suggested that an error of omission appears in the failure of the record to show either the presence of counsel for the accused, or an inquiry by the court as to counsel for the accused, or the appointment of counsel by the court to assist the accused. Here also if any presumption is to be indulged in it should be one of regularity rather than that of irregularity. * * * in the complete absence of any showing to the contrary, such a presumption of regularity indicates that the court constitutionally discharged, rather than unconstitutionally disregarded, its state and federal duties to the petitioner, including those relating to his right, if any, to the assistance of counsel." (333 U.S. 672, 68 S.Ct. 779).

See also, *U. S. v. Newton,* 22 C.M.R. 534 (A.B.R. 1956); *U. S. v. Annis,* 5 M.J. 351 (C.M.A. 1978).

 Applying the foregoing principles, we believe that on this summarized record and in the absence of any evidence before us to the contrary it may be presumed that the trial judge performed his judicial functions in conformance with the law as enunciated by the Court of Military Appeals. In any event the record affirmatively reveals that the military judge "ascertained from the accused that he understood the terms of the Pretrial Agreement" and that is the requirement of *Green* and *King.* It is not what the counsel believe the various provisions of the pretrial agreement may mean but the accused's understanding of those provisions which controls the judge's deter-

mination as to whether or not the guilty pleas have been providently entered and may be accepted. *U. S. v. Easley*, 4 M.J. 768 (A.C.M.R. 1977), petition for review by U.S.C.M.A. denied, 5 M.J. 132 (C.M.A. 1978); *U. S. v. Arrington*, 5 M.J. 756 (A.C. M.R. 1978). The appellant's contention that his conviction must be reversed for failure of the record to demonstrate the trial judge's compliance with the requirements of *U. S. v. Green*, and *U. S. v. King*, is without merit.

■ Under the fifth charge Storekeeper Third Class Allen stands convicted of two violations of a lawful general regulation, namely Article 9–2–15, U.S. Coast Guard Regulations, CG–300 (1975) by possessing respectively about 10 grams of marijuana and about 14 capsules of LSD. The appellant now asks that his conviction of these offenses be set aside and that the charge be dismissed on the ground that only the Secretary of a department has or may exercise authority to promulgate lawful general regulations and that the purported delegation of authority from the Secretary of Transportation pursuant to which the Commandant promulgated Coast Guard Regulations is ineffective. We cannot accept the appellant's conclusion.

On 7 February 1975, the Commandant of the Coast Guard promulgated U.S. Coast Guard Regulations CG–300, including the regulation forming the basis of the Article 92 offenses in this case. In paragraph 4 of his letter of promulgation the Commandant stated that the regulations were issued under the authority vested in him by the Secretary of Transportation. By action published in 49 CFR 1.46(b), the Secretary of Transportation delegated to the Commandant of the Coast Guard the authority to "carry out all the activities of the Coast Guard * * *." This delegation was made pursuant to 14 U.S.C. § 631 providing in pertinent part:

> "The Secretary * * * is authorized to confer or impose upon the Commandant of the Coast Guard any of the rights, privileges, powers, or duties, in respect to the administration of the Coast Guard,

vested in or imposed upon the Secretary * * * by this title or other provisions of law."

The delegation of authority includes the Secretary's authority under 14 U.S.C. § 633 to " * * * promulgate such regulations and orders as he deems appropriate to carry out the provisions of this title or any other law applicable to the Coast Guard."

In addition to the comprehensive authority delegated by the Secretary of Transportation the Commandant has broad statutory authority conferred upon him by 14 U.S.C. § 632, in part as follows:

> "All powers and functions conferred upon the Coast Guard, or the Commandant, by or pursuant to this title or any other law shall, unless otherwise specifically stated, be executed by the Commandant subject to the general supervision of the Secretary. In order to execute the powers and functions vested in him, the Commandant may * * * issue rules, orders, and instructions, not inconsistent with law, relating to the organization, internal administration, and personnel of the Coast Guard."

Moreover, the Commandant is unquestionably within that class of Commanders found by the Court of Military Appeals to have authority to promulgate general orders or regulations in contemplation of Article 92(1) Uniform Code of Military Justice. *U. S. v. Porter*, 11 U.S.C.M.A. 170, 28 C.M.R. 394 (1960); *U. S. v. Chunn*, 15 U.S.C.M.A. 550, 36 C.M.R. 48 (1965).

Even assuming as the appellant contends that the authority to promulgate "regulations" for the government of the Coast Guard is a non-delegable duty or right reposing in the Secretary of Transportation, the Commandant nevertheless has clear statutory or command authority to proscribe the "introduction, possession, use, sale, or other transfer of marijuana, narcotic substances, or other controlled substances" as he did in Article 9–2–15, U.S. Coast Guard Regulations, CG–300. And whether that proscription is denominated a regulation, a rule, an order, an instruction

or otherwise, it was lawful, requiring the compliance of this accused at the time and place alleged.

■ There is also the presumption, not challenged by any evidence before us, that the actions of the Secretary of Transportation in delegating his authority to the Commandant and the actions of the Commandant in promulgating U.S. Coast Guard Regulations were regularly performed. See *U. S. v. Masusock,* 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951); *Johnson v. United States,* 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142.

During an Article 39(a), 10 U.S.C. § 839(a) session before arraignment the trial defense counsel made two motions for appropriate relief in the nature of motions to suppress evidence. These related to the marijuana and LSD seized from the accused forming the basis of specifications 1 and 3 of Charge V and the extrajudicial statement taken from the accused implicating him in the conspiracy, larceny, housebreaking and bribery offenses alleged in Charges I through IV. The military judge declined to rule on the motions prior to the entry of pleas. (R 4 & 5). The appellant now contends that the trial judge's refusal to rule on the suppression motions prior to the entry of pleas constituted an abuse of judicial discretion to his prejudice.

■ The motions made by the defense counsel could have been entertained by the military judge during the Article 39(a) session prior to arraignment. But it was also within the judge's discretion to defer litigation of the motions until a later stage of the proceedings and, in the absence of a clear abuse of his discretion, this Court should not substitute its judgment for that of the trial judge. Paragraph 67(e) M.C.M. 1969 (Rev.); *U. S. v. Freeman,* 15 U.S.C.M.A. 126, 35 C.M.R. 98 (1964); *U. S. v. Farmer,* 39 C.M.R. 776 (A.B.R. 1966). Moreover, by his subsequent entry of provident guilty pleas, the accused waived any error in the proceedings which was neither jurisdictional nor a deprivation of due process of law.

*U. S. v. Rehorn,* 9 U.S.C.M.A. 487, 26 C.M.R. 267 (1958); *U. S. v. Lopez,* 20 U.S.C.M.A. 76, 42 C.M.R. 268 (1970); *U. S. v. Dusenberry,* 23 U.S.C.M.A. 287, 49 C.M.R. 536 (1975); *U. S. v. Hamil,* 15 U.S.C.M.A. 110, 35 C.M.R. 82 (1964).

The trial counsel offered an extrajudicial statement made by the accused on 27 May 1977 for consideration by the court members in the determination of an appropriate sentence. The defense counsel objected on the grounds that the statement had been obtained by the interrogating agents by unlawful inducement. The trial judge's ruling admitting the statement is the subject of the final assignment of error before this Court.

On 27 May 1977 the accused was questioned by Special Agent Edward Drinan of the Drug Enforcement Administration and by Special Agent Charles L. Pidcoe of Coast Guard Intelligence. At about 2100 hours the accused and his wife, also a member of the Coast Guard, were brought to the Coast Guard Base, South Portland, Maine. At the outset Special Agent Pidcoe fully informed the accused of his rights pursuant to Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, including the right to consult with counsel. The accused's acknowledgement of this advice is contained in Prosecution Exhibits 13 & 14 and the adequacy of that advice is not now under attack. The interview of the accused extended over a period of two or two and a half hours and terminated before midnight. Initially the accused refused to answer any questions. He was then told that the agents had information of his involvement in the theft of the two bales of marijuana from the truck on 21 May 1977. Then according to a stipulation received by the trial judge as Appellate Exhibit XXI, Special Agent Drinan recounted the ensuing events as follows:

"I did not tell him that he and his wife could go to jail at that time, but I did say that the ALLENs could be sentenced to 50 years in jail and be fined $50,000.00. I told SK3 ALLEN that he was too soft

and could not take federal prison. I indicated that he and his wife would not be tried in the civilian courts by the U. S. Attorney, if he provided information as to the involvement of the civilians in the incident.

"Then S/A PIDCOE interrupted, readvised ALLEN of his rights, and told ALLEN that this promise did not extend to the Coast Guard and he could be tried by a Courts-Martial and any statements he gave would be used against him.

"I then told ALLEN that trial by a Coast Guard Court was something different and he would have to deal with that separately and I could make no promises as to any Courts-Martial.

"ALLEN then asked to speak alone with his wife, was allowed to do so, and thereafter, he made his statement, which was then reduced to writing."

It is urged that the appellant's statement was unlawfully induced by the assertion that he and his wife could be sentenced to fifty years in jail and fined $50,000 followed by the promise that he would not be prosecuted in the civilian courts even though he could be tried by a court-martial.

■ We begin with the premise that if the accused's extrajudicial statement resulted only from an improper inducement of the Government's agents it was inadmissible for all purposes at his trial and should not have been admitted for consideration by the court members during their deliberations on sentence. See *U. S. v. Girard*, 23 U.S.C.M.A. 263, 49 C.M.R. 438 (1975).

■ The record indicates that SK3 Allen's wife was a legitimate suspect in the case so that Special Agent Drinan's mention of her in connection with the possible civilian court sentence to confinement and fine did not constitute a threat against a relative or friend not otherwise already involved. See *U. S. v. Askew*, 14 U.S.C.M.A. 257, 34 C.M.R. 37 (1963); *U. S. v. Houston*, 14 U.S.C.M.A. 239, 35 C.M.R. 211 (1965); *U.*

*S. v. O'Such*, 16 U.S.C.M.A. 357, 37 C.M.R. 157 (1967).

■ The question of the voluntariness of a confession of crime involves the mental freedom of the accused either to speak or remain silent. It is a question of fact and to be admissible the confession must be the product of free choice, that is, of a will not encumbered or burdened by threats, promises, inducements, or physical and mental abuse. *U. S. v. Dalrymple*, 14 U.S.C.M.A. 307, 34 C.M.R. 87 (1963) and cases cited therein. In applying this test the Court of Military Appeals has held a statement to an accused that if he refused to cooperate he would be turned over to federal authorities and that it would be better for him to be tried by the military did not constitute improper inducement, per se, but raised only an issue for the triers of fact. See *U. S. v. Johnson*, 9 U.S.C.M.A. 591, 26 C.M.R. 371 (1958). In a more recent case the Court of Military Appeals considered the issue of voluntariness of a confession which was made only after the interrogator suggested to the accused among other things that if the accused confessed his case would possibly be tried in an American court rather than a Chinese court. In that connection he referred specifically to the case of three other Americans who had been held for two and a half years pending trial in a Chinese court. In holding that the tactics and assertions of the criminal investigator did not render the confession involuntary as a matter of law, the Court said that the presence of improper influences or pressures in an interrogation does not alone taint the resulting statement unless the statement was in fact induced by such improper influences. The difference between what constitutes improper inducement or coercion as a matter of law and as a question of fact is necessarily one of degree.

"Where the evidence permits different inferences, an appellate court should accept the determination of the trier of fact if it is supported by substantial evidence." *U. S. v. Carmichael*, 21 U.S.C. M.A. 530, 45 C.M.R. 304 (1972).

See also *U. S. v. Munt*, 3 M.J. 1082 (A.C. M.R. 1977) petition for review by U.S.C. M.A. denied 4 M.J. 198 (1978). The evidence in this case permits different inferences one of which certainly is that the accused was not deprived of his mental freedom to choose either to speak or remain silent and that his confession to agents Drinan and Pidcoe was freely and voluntarily made. The trial judge having evidently made such a factual determination, his ruling should not now be disturbed.

The findings of guilty and the sentence as approved on review below are affirmed.

Judges BURGESS, ALCANTARA and BRIDGMAN concur.

Judge HOLLAND did not participate in the decision in this case.