**UNITED STATES**

v.

**Steve A. KENNEDY, Aviation Machinist Mate Third Class, U.S. Coast Guard, CGCMS 23552.**

**No. 832.**

U. S. Coast Guard Court of Military Review.

21 May 1981.

Trial Counsel: LCDR Mark A. O'Hara, USCG.

Defense Counsel: LT Robert B. Ellard, USCG.

Appellate Defense Counsel: LT Judith M. Hammond, USCGR.

Appellate Government Counsel: LCDR Robert W. Ferguson, USCG, LT Dana J. St. James, USCGR.

## OPINION

MORGAN, Chief Judge:

Aviation Machinist Mate Third Class Steve A. Kennedy was tried by a special court-martial military judge and members 14–17 and 28–31 August 1979. He pleaded not guilty to all charges and specifications but was convicted of two violations of Article 9–2–15 Coast Guard Regulations by the possession, sale or other transfer of quaaludes and cocaine in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. 892, wrongful appropriation of a Coast Guard engine ignition harness having a value greater than $500.00 in violation of Article 121, UCMJ, 10 U.S.C. 921 and obstructing justice by endeavoring to influence the testimony of a prospective witness against him and another accused in violation of Article 134, UCMJ, 10 U.S.C. 934. The members sentenced the accused to be confined at hard labor for three months, to forfeit $200.00 per month for three months, to be reduced to pay grade E–1 and to be discharged from the service with a bad conduct discharge. The findings of guilty and the sentence were approved by the convening authority and by the officer exercising general court-martial jurisdiction.

Appellate defense counsel advances several grounds on which it is urged that AD3 Kennedy's conviction for violating Coast Guard Regulations must be set aside. First, counsel argues that Article 9–2–15 of the regulations is not punitive. Alternatively it is contended that the evidence is insufficient as a matter of law to support AD3 Kennedy's conviction of violating Article 92, UCMJ, since the government failed to show that the accused had actual notice of Article 9–2–15. This latter contention is predicated on the premise that the Freedom

of Information Act, 5 U.S.C. 552 requires the publication of Coast Guard Regulations in the Federal Register; that the regulations were not published in the Federal Register; and, therefore, that the accused cannot be presumed to have knowledge of Article 9–2–15. Next, counsel asserts that the evidence was insufficient to establish beyond a reasonable doubt that the substance referred to in specification 1, Charge I was Methaqualone. Finally it is alleged that the accused was prejudiced by the military judge's instructions equating reasonable doubt to substantial doubt.

Article 9–2–15 of U.S. Coast Guard Regulations (CG–300) dated 7 February 1975 provides in part:

"A. Except for authorized medicinal purposes, the introduction, possession, use, sale, or other transfer of marijuana, narcotic substances, or other controlled substances on board any ship, craft, or aircraft of the Coast Guard, in any government-owned vehicle or within any Coast Guard station or other place under the jurisdiction of the Coast Guard, or the possession, use, sale, or other transfer of marijuana, narcotic substances, or other controlled substances by persons in the Coast Guard is prohibited."

U.S. Coast Guard Regulations are a disparate conglomeration of policies, rules, orders and instructions ranging from the General Organization of the Coast Guard described in Chapter 1, through Rank and Command discussed in Chapter 5, to Duties and Authority of the Coast Guard outlined in Chapter 15. The regulations were issued by the Commandant in his own right pursuant to 14 U.S.C. 632 and under authority delegated by the Secretary of Transportation pursuant to 14 U.S.C. 631. The Commandant's letter promulgating Coast Guard Regulations 7 February 1975 provides in part:

"1. *Purpose.* This publication provides general rules concerning matters of major principle relating to the government of the Coast Guard."

\*　　\*　　\*　　\*　　\*　　\*

"5. *Discussion.* In addition to prescribing general rules concerning matters of major principle, these Regulations also include, for the purpose of maintaining standardization of certain procedures and doctrines, rules of lesser importance which are reasonably permanent in nature. \* \* \* "

Part 2 of Chapter 2 of the Regulations is entitled "Compliance and Applicability". Article 2–2–1 of Part 2 pertaining to Coast Guard Personnel provides:

"A. Each officer and enlisted person in the Coast Guard shall acquaint themselves with, comply with, and, only to the extent of their authority, enforce the laws of the United States, executive orders, these regulations, and the rules and instructions issued thereunder."

A regulation may be used as a basis for punishing violators if it is sufficiently definite to give notice of what conduct is necessary to avoid violating it. The fact that the regulation is aimed at more than one objective does not render it unenforceable for punitive sanctions. *U. S. v. Benway*, 19 U.S.C.M.A. 345, 41 C.M.R. 345 (1970). No single characteristic of a general order or regulation determines whether it applies punitively to members of a command or service. The order in its entirety must demonstrate that rather than providing general guidelines for the conduct of military functions it is basically intended to regulate conduct of individual members and that its direct application of sanctions for its violation is self evident. *U. S. v. Hogsett*, 8 U.S.C.M.A. 681, 25 C.M.R. 185 (1958); *U. S. v. Baker*, 18 U.S.C.M.A. 504, 40 C.M.R. 216 (1969); *U. S. v. Nardell*, 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972).

The Court of Military Appeals has said that if a general order or regulation is to provide a course of conduct for servicemen and a criminal sanction for failure to abide by it the order or regulation should clearly state to whom the provisions are applicable and whether or not further implementation is required as a condition to its effectiveness as a criminal law. *U. S. v. Scott*, 22 U.S.C.M.A. 25, 46 C.M.R. 25 (1972).

But failure of the order or regulation to warn explicitly that its violation may subject the violator to criminal sanctions will not foreclose prosecution under Article 92, U.C.M.J., if the prohibited conduct is described clearly and reasonable persons would have no difficulty in understanding what could not be done. *U. S. v. Curtin,* 9 U.S.C.M.A. 427, 26 C.M.R. 207 (1958); *U. S. v. McEnany,* 19 U.S.C.M.A. 556, 42 C.M.R. 158 (1970).

■ Neither the letter promulgating Coast Guard Regulations, introductory portions of the regulations nor individual articles of the regulations contain language indicating that the regulations are punitive. However, Article 2–2–1 quoted above commands that each member of the Coast Guard become acquainted with and comply with the regulations. Chapter 9 of the regulations is entitled "Regulations and Instructions of General Application" and it is clear from the language of article 9–2–15 that it applies to the individual Coast Guard member. The article in clear and unambiguous terms prohibits the possession, use, sale, or other transfer of marijuana, narcotic substances, or other controlled substances by persons in the Coast Guard and further implementation by subordinate commanders to give it effect as a code of conduct is not required. The article clearly defines the types of misconduct that could result in punitive action and places all concerned on notice that noncompliance may involve criminal sanctions. Thus, we are satisfied that Article 9–2–15 fulfills the requirements of a lawful general regulation enforceable under Article 92, UCMJ. *U. S. v. Benway* and *U. S. v. McEnany,* both *supra; U. S. v. Louder,* 7 M.J. 548 (A.F.C.M.R.1979) petition for review by U.S.C.M.A. denied 7 M.J. 328.

Paragraph 171a, Manual for Courts-martial 1969 (Rev.), provides in part:

"General orders or regulations are those orders or regulations generally applicable to an armed force which are properly published by the President or by the Secretary of Defense, of Transportation, or of a military department * * *."

As indicated above, Coast Guard Regulations were promulgated by the Commandant in his own right and under authority delegated by the Secretary of Transportation. The Commandant undoubtedly had authority in either capacity to issue a general order or regulation applicable to all members of the Coast Guard. See *U. S. v. Allen,* 6 M.J. 633 (C.G.C.M.R.1978); *U. S. v. Porter,* 11 U.S.C.M.A. 170, 28 C.M.R. 394 (1960); *U. S. v. Chunn,* 15 U.S.C.M.A. 550, 36 C.M.R. 48 (1965).

■ Coast Guard Regulations appear regular on their face and they are presumed to be lawful. *U. S. v. Trani,* 1 U.S.C.M.A. 293, 3 C.M.R. 27 (1952); *U. S. v. Bayhand,* 6 U.S.C.M.A. 762, 21 C.M.R. 84 (1956); *U. S. v. Smith,* 21 U.S.C.M.A. 231, 45 C.M.R. 5 (1972). There is also a presumption that the Commandant's actions in promulgating Coast Guard Regulations were performed regularly and legally in compliance with controlling statutory provisions. 29 Am. Jur.2d, Evidence §§ 171, 172; *U. S. v. Allen, supra; Johnson v. United States,* 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142 (1911); *Sunday Lake Iron Co. v. Wakefield Tp.,* 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); *U. S. v. Masusock,* 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951); *U. S. v. Taylor,* 2 U.S.C.M.A. 389, 9 C.M.R. 19 (1953); *U. S. v. Shenefield,* 18 U.S.C.M.A. 453, 40 C.M.R. 165 (1965).

No evidence has been found in the record and none has been brought to our attention indicating either that U.S. Coast Guard Regulations are illegal or that they were not issued in compliance with applicable statutory provisions. Thus, the presumption that they were issued regularly and are lawful has not been overcome.

The substance forming the basis of the specification under which the accused was convicted of violating Coast Guard Regulations by the possession, sale, or other transfer of quaaludes never came into government hands. Consequently, there was no report of laboratory analysis or expert testimony identifying the substance. Instead the evidence consisted essentially of the testimony of an AM3 Yeakos. He had become a Coast Guard Intelligence informer and

was the government's principal witness on the quaalude offense. According to Yeakos, he was not a drug user, had not used cocaine or quaaludes, but had tried marijuana.

AM3 Yeakos testified that in mid-February 1979 he was with AD3 Kennedy and AD3 Pratt in front of the paint shop at the Coast Guard Air Station Miami. He saw Pratt give Kennedy $40.00 in exchange for a small plastic bag of pills. Contemporaneous with the delivery of the bag of pills to Pratt, Kennedy said that they were "good ludes". Shortly thereafter at Yeakos' desk in the tool crib, Pratt broke up two of the pills and put them in a cup with Coca-Cola. He asked Yeakos if he wanted some of the mixture. When Yeakos asked what, Pratt replied "ludes and soda."

AD3 Kennedy offered to get AM3 Yeakos anything he needed mentioning specifically grass, cocaine and quaaludes. On one occasion Kennedy offered to sell Yeakos 100 quaaludes for $1.95 each. On 2 March 1979 Yeakos did make a controlled buy of cocaine from Kennedy on behalf of Coast Guard Intelligence.

On 11 May 1979 AM3 Yeakos was confronted by Kennedy, Pratt, Sanchez and others in the break area of the metal shop about statements he had made to Coast Guard Intelligence concerning their involvement with drugs and controlled substances. As Yeakos was leaving for muster he heard Kennedy tell Pratt, "They also know abut the ludes I sold you in front of the paint shop." Other evidence of record established that "ludes" is the common reference to quaaludes, that the generic name for quaaludes is Methaqualone and that Methaqualone is a controlled substance.

■ A person selling or using a substance may be presumed to know its nature. A contemporaneous declaration as to the nature of a substance by a person selling or using it is evidence of the identity of the substance. *U. S. v. Weinstein,* 19 U.S.C. M.A. 29, 41 C.M.R. 29 (1969); *U. S. v. Villamil-Durand,* 46 C.M.R. 1070 (A.F.C. M.R. 1973); *U. S. v. White,* 9 M.J. 168 (C.M.A. 1980). On the basis of the state-ments of the seller Kennedy and the user Pratt identifying the substance, the members of the court were fully justified in finding beyond a reasonable doubt that the substance was quaaludes as alleged. *U. S. v. Weinstein, supra; U. S. v. Smith,* 3 U.S. C.M.A. 803, 14 C.M.R. 221 (1954); *U. S. v. Papenheim,* 19 U.S.C.M.A. 203, 41 C.M.R. 203 (1970); *U. S. v. Jackson,* 49 C.M.R. 881 (A.C.M.R. 1975); *U. S. v. Waller,* 3 M.J. 32 (C.M.A. 1977). Cf. *U. S. v. Jenkins,* 5 M.J. 905 (A.C.M.R. 1978). We have weighed the evidence and are equally convinced beyond a reasonable doubt that the pills sold to Pratt by Kennedy in front of the paint shop were quaaludes.

■ The military judge utilized the language from the Military Judge's Guide (Department of the Army Pamphlet 27–9 para. 2–4 19 May 1969) to define reasonable doubt for the members in part as follows:

"By reasonable doubt is not intended a fanciful doubt or conjecture, but substantial, honest, conscientious doubt, suggested by the material evidence, or lack of it, in this case. It is an honest, substantial misgiving generated by insufficiency of proof of guilt."

Trial defense counsel objected to the foregoing language and offered a substitute definition of reasonable doubt which the military judge refused.

The military judge's instruction on reasonable doubt in this case is essentially the same as that condemned by the Court of Military Appeals in *U. S. v. Salley,* 9 M.J. 189 (C.M.A. 1980) and as that causing reversal in *U. S. v. Cotten,* 10 M.J. 260 (C.M.A. 1981). In this latter case the Court found prejudice to the accused by the equation of reasonable doubt to substantial doubt in part because:

"This was a highly contested drug case with controverted testimony from two government witnesses, and the appellant completely denied the charge on which he was ultimately convicted." 10 M.J. at 262.

The case before us was also contested and the government was forced to the full

measure of its proof. However, the evidence bearing directly on the offenses was not materially controverted and the accused Kennedy did not testify. Thus, the members' proper understanding of reasonable doubt was not crucial as the Court found it to be in *U. S. v. Cotten.* Instead, a review of the record convinces us that a rational fact finder could readily have found the accused guilty beyond a reasonable doubt of the offenses of which he was convicted and that the instructional error was harmless. See *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *U. S. v. Moss* and *U. S. v. Woodrum,* affirmed on summary disposition 10 M.J. 329, 330 (C.M.A. 1981).

The findings of guilty and the sentence approved on review below are affirmed.

HOLLAND, VERSAW, BEAVER and BRIDGMAN, JJ., concur.