UNITED STATES, Appellee

v.

LOUIS A. SMITH, Private E–2, U. S. Army, Appellant

3 USCMA 803, 14 CMR 221

No. 2920

Decided February 26, 1954

Lt Col Edgar R. Minnich, U. S. Army, 1st Lt Wade J. Dahood, U. S. Army, and 1st Lt John W. Fuhrman, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and 1st Lt Kenneth A. Howard, U. S. Army, for Appellee.

### Opinion of the Court

George W. Latimer, Judge:

The accused was convicted by a general court-martial of wrongfully using a habit-forming drug, to wit, morphine, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for two years. The convening authority approved and a board of review in the office of The Judge Advocate General affirmed. We granted accused's petition for review in order that we might determine the single issue of whether the evidence is sufficient to support the finding of guilty.

It is conceded that the evidence of the prosecution, which included a pretrial confession by the accused, is sufficient to support the finding with the exception of the identity of the drug. We will, therefore, direct our discussion to the sufficiency of the evidence in that particular.

On November 1, 1952, the accused with two companions, Phillips and Perkins, went to a Korean dispensary, otherwise identified as a Korean hospital, for the purpose of purchasing an injection of morphine. Phillips testified that both he and the accused entered the dispensary and that he asked the Korean "mamasan" for a shot of morphine; that he asked the accused if he desired to receive a dose; and, that upon receiving an affirmative reply both received an injection of the same solution. Phillips further testified that on a previous occasion she had given him another shot. He identified the drug as morphine, but on cross-examination stated that his identification was based upon what the Korean woman had told him. Defense counsel then moved that his testimony on that point be stricken because it was based upon hearsay. Trial counsel requested permission to develop further the subject, and he then established that Phillips had received injections of morphine an undisclosed number of times prior to this occasion; that at one time he had received a shot of morphine at an Army dispensary and had read the word "morphine" on the container from which he received the injection; and that the drug he and the accused received on November 1, 1952, was morphine because its effect upon him was the same as that resulting from his previous injections of morphine. In connection

with its physical reaction, Phillips testified that he felt a paralysis for a couple of seconds which caused a "tight feeling" in the head and stomach and around the eyes. Appellate defense counsel contend that this testimony established that Phillips was not qualified to give an opinion on the identity of the substance administered to him.

It has been well established that a user of a habit-forming drug may express an opinion on its █ identity. In Pennacchio v. United States, 263 Fed 66, decided in 1920, the Circuit Court of Appeals, Second Circuit, dealt with an assignment of error based upon the contention that a witness to whom a sale of opium was made was incompetent to testify as to its identity because expert testimony was required to establish that fact. The court overruled this contention stating:

"But the government rightly contends that, it being established that Gillies was a habitual user of opium, his testimony as to the nature of the substance with which he was familiar was sufficient to require the submission of the question of whether or not the substance was opium to the jury as a question of fact. His testimony was given without objection, and he testified that he had been using the opium for about a year, and he was therefore familiar with it. However, a motion was subsequently made to strike out his testimony, which was denied. This was evidence as to a fact which the witness was competent to state, and its submission to the jury was therefore proper. The witness possessed greater knowledge than the jury as to the fact that it was opium, and therefore his testimony was of assistance to them. One who drinks fermented liquor and knows the taste of it, although not a chemist, may testify that a particular liquor was fermented. Merkle v. State, 37 Ala 139. One familiar with the odor of carbolic acid, although not a chemist, may be permitted to testify that such an odor came from the corpse. Greene v. State, 125 Ga 742, 54 SE 742. He may also testify to the odor of chloroform. Miller v. State (Tex App) 50 SW 704. The qualification to express an opinion that it was opium was gained from his habitual use of it, and the fact that he said he mixed the contents with water and drank it, and therefore tasted it."

This rule has been followed in subsequent cases. Weaver v. United States, 111 F2d 603 (CA 2d Cir 1940); Banks v. United States, 147 F2d 628 (CA 9th Cir 1945); and United States v. Tramaglino, 197 F2d 928 (CA 2d Cir 1952); also Medina v. State, 149 Tex Cr R 249, 193 SW2d 196 (1945).

Appellate defense counsel concede that rule but contend the principle is inapplicable in the case at █ bar because the evidence fails to establish that Phillips was an habitual user of morphine, and his evidence on the physiological effect of the drug is contrary to well accepted medical principles. Conceding the evidence concerning the exact extent of his experience with morphine is underdeveloped, the record is sufficient to show that he was a user of the drug. When asked if he had not used it on many occasions, he replied "not too many." Conceding he was examined concerning only two previous occasions when he had received an injection of morphine, he was not asked if there were other times when he had taken the drug and his answers to some questions indicate a more extensive use. Be that as it may, on one of the two identified occasions the drug was obtained from an Army dispensary, the container was labeled, and the dosage was given by Army medical personnel. From this injection he received the same physical reaction as he did from the solution administered to him on the occasion now in question. That evidence alone is sufficient to permit him to express an opinion to the fact finders. While his experience might be limited, a satisfactory base is established to admit the testimony. The extent of his other prior use of the drug might affect the weight to be given to his testimony but not its competency.

Moreover, surrounding facts and circumstances do not cast doubt on Phil-

lips' testimony that the substance administered the accused was morphine. The accused in his pretrial statement conceded that he and Phillips went to the dispensary for the express purpose of obtaining a shot. It was described as a hospital, and the personnel undoubtedly had some knowledge of drugs. When they arrived, a request was made for morphine and both received injections from the same bottle. The place, the purpose, the nature of the request, and the method of injection all tend to support the findings that some drug was administered, and there is no contrary testimony. We, therefore, conclude there is substantial evidence to support the finding.

In arriving at our conclusion, we have not overlooked counsel's contention that the described physiological effect shows that Phillips was not qualified to express an opinion. It may be that the effect is not explained precisely as it is known to the medical profession, but we sense in Phillips' testimony some similarity. Counsel quotes the following excerpt from Gray's Attorneys' Textbook of Medicine, Third Edition, Volume I, section 10.30, page 252:

"Morphine produces profound unconsciousness. There is no *paralysis*. Respirations are slow, shallow and usually quiet. The pupils are exceedingly small." [Emphasis supplied.]

There is no testimony that morphine would not react in the manner described by Phillips and we are not prepared to say that his physical reaction might not be realized in the early stages before reaching unconsciousness. Moreover, it is entirely possible that Phillips was not using the term "paralysis" in the same sense as the textbook writer. Finally, the similarity of effect between the injection in issue and the previous known administration of the drug is more persuasive of its nature than is the description by one who may not possess the power of clear expression.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.