UNITED STATES, Appellee,

v.

Private E–2 Lavern E. DAY, U.S. Army, Appellant.

No. 46,480.

CM 442598.

U.S. Court of Military Appeals.

July 15, 1985.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Major Edwin D. Selby, Captain Donna Chapin Maizel* (on brief); *Colonel*

*R. Rex Brookshire, II,* and *Major Lawrence F. Klar.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Lieutenant Colonel Thomas M. Curtis, Captain Garreth E. Shaw* (on brief).

*Opinion of the Court*

PER CURIAM:

In 1982 a general court-martial consisting of a military judge alone tried appellant at Nellingen, Federal Republic of Germany, for numerous drug offenses, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Pursuant to his pleas, he was found guilty of possession of heroin (two specifications),[1] sale of heroin, and use of heroin (two specifications). Contrary to his pleas, he was also convicted of possession and transfer of hashish and transfer of heroin, which involved specifications 6, 7, and 10 of Charge I, respectively. The military judge sentenced him to a dishonorable discharge, 5 years' confinement, total forfeitures, and reduction to Private E-1. The convening authority approved the findings; however, pursuant to a pretrial agreement, he reduced the confinement to 4 years but otherwise approved the sentence. The Court of Military Review affirmed the findings and sentence. Thereafter, we granted review to determine whether the prosecution presented sufficient evidence to sustain the findings of guilty as to the contested specifications. 17 M.J. 48 (1983).

According to specification 6, "at Heilbronn, Germany, ... on or about 1 November 1981, [appellant] wrongfully ha[d] in his possession 1000 grams, more or less, of marihuana in the hashish form." Specification 7 alleged that at the same time and place appellant "wrongfully transfer[red] 250 grams, more or less, of marihuana in

1. On specification 9, appellant pleaded guilty except as to the amount, he was convicted of the amount as alleged.

the hashish form."[2] Finally, specification 10 stated that appellant, "at Frankfurt, Germany, ... on or about 23 September 1981, wrongfully transfer[red] ... heroin."

At trial, the Government relied on Mrs. Jutta Bennett's testimony to prove these specifications. As to specification 10 she testified that on September 23, 1981, appellant asked her to drive him to Frankfurt because "[h]e said he didn't feel well enough to drive." She believed that "[h]e was 'Jonsing'"—*i.e.*, "[h]e was having withdrawal." When they arrived at the house to which appellant directed her, she stayed in her car because appellant told her that he could not take her inside. Day then entered a nearby apartment; and about an hour later he returned accompanied by a German woman, whom he did not introduce to her. Appellant "said he will drive home now"; and, according to Mrs. Bennett, on the way back, "I seen [sic] him give her heroin." Furthermore, she testified that Day "had about five grams" of heroin on him, as she knew "because I seen [sic] the amount, which was about five grams." Also, appellant had "said he bought five grams" of heroin and that he had paid "[a]bout a 1000 marks" for it. At one point during their return trip, Mrs. Bennett held the heroin, which was "in a plastic bag" that "had a little zip-lock on top." She recalled that she held the heroin for Day after he had told her "it would be better, if the German police stops us, that a female holds it because they can't search the females."

Concerning the other two specifications Mrs. Bennett testified that on November 1, 1981, appellant and a friend came to her apartment and appellant had "[a]bout a kilo" of hashish, which "was in four plates." Day weighed the plates on her husband's scale and she "heard him say" that each plate weighed approximately 250 grams. Mrs. Bennett had protested to her husband, "I don't like that much stuff in my house," "because at the time—I mean a

couple of months before my husband got in trouble with it." Appellant gave one of the plates of hashish to his friend; and then they both departed with all the hashish.

Appellant contends that Mrs. Bennett did not demonstrate a level of experience with heroin or hashish sufficient for her positively to identify these substances. Therefore, he claims that the evidence is legally insufficient to sustain the findings of guilty as to these specifications. We disagree.

Just after Mrs. Bennett began her testimony, trial counsel told the military judge:

I'm going to establish that Mrs. Bennett is somewhat of a self-learned expert of heroin and drugs of that nature. That, therefore, she would be able to recognize heroin when she sees it, and particularly she knows what act somebody is doing in order to use heroin.

We have no evidence for some of these charges, any laboratory evidence or anything. It's just the testimony of Mrs. Bennett that she recognized it from her own personal background and use.

To this end, Mrs. Bennett testified that she could "recognize ... [heroin] whenever" she saw it, "because I used to use it myself, and I can say I know quite a bit about it." In fact, formerly she had been a heroin addict; but she had stopped using heroin about three and a half years before. Subsequently, she also had been arrested by the German police and found guilty of using heroin. Mrs. Bennett testified that she had been familiar with the price of heroin, and in her opinion the 1000 marks which appellant paid for the five grams of heroin was "reasonable." She recalled that, two years before, a gram of heroin had cost about 200 marks.

Asked how she knew it was hashish that appellant had brought to her apartment, Mrs. Bennett testified that she had used hashish "a couple of years back, but I just tried it. I don't usually use it." However, if she saw some, she would recognize it;

**2.** In his findings, the military judge substituted "Hassersheim" for "Heilbronn."

and she was "[p]ositive" that the substance in Day's possession "was hashish." Furthermore, appellant and his friend "were talking about the drug" and calling it "[d]ope," and to her, "dope" meant "[h]ashish."

■ This evidence, if believed, sufficed to prove that the substances were actually heroin and hashish. "Although chemical analysis of a drug may facilitate proof of the Government's case, it 'is not essential to a valid conviction for a narcotic offense.'" *United States v. Tyler*, 17 M.J. 381, 387 (C.M.A.1984). A lay witness as familiar and experienced with these controlled substances as was Mrs. Bennett may identify the prohibited drug, for,

> as the Court noted three decades ago: "It has been well established that a user of a habit-forming drug may express an opinion on its identity." *United States v. Smith*, 3 U.S.C.M.A. 803, 805, 14 C.M.R. 221, 223 (1954). Moreover, habitual use is not required.

*Id.* at 384.

■ Also, appellant himself had said that he had heroin and had referred to the hashish as "dope." Just as we observed about the identity of the cocaine in *Tyler*, appellant "can hardly complain if the factfinder gave considerable weight to his warranty." *Id.* at 386. In addition to appellant's own remark, this strong circumstantial evidence exists for inferring the nature of the substances: (a) a high price had been paid for the "heroin"; (b) it was in a plastic bag; (c) appellant wanted Mrs. Bennett to hold the bag because the German police could not search females; (d) appellant was "forcing" or withdrawing from heroin; (e) the "hashish" was in "four plates"; (f) each "plate" of "hashish" was weighed on the scales in Mrs. Bennett's home; and (g) the scales belonged to Mrs. Bennett's husband who had been in trouble because of drug transactions. Taken as a whole, the evidence identifying the heroin and hashish was as strong as that which established the identity of the cocaine in *Tyler*, so it is also legally sufficient.

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER did not participate.