UNITED STATES, Appellee,

v.

**Private E-2 Kent E. BODEN II,
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, United States
Army, Appellant.**

CM 446811.

U.S. Army Court of Military Review.

14 Feb. 1986.

Captain H. Alan Pell, JAGC (argued); Lieutenant Colonel William P. Heaston, JAGC, Major Edwin D. Selby, JAGC (on brief), for appellant.

Captain Erik M. Stumpfel, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Captain Samuel J. Rob, JAGC (on brief), for appellee.

Before COMEAU, WATKINS and LYMBURNER, Appellate Military Judges.

## OPINION OF THE COURT

COMEAU, Senior Judge:

Appellant was tried, beginning on 21 November 1984, by a military judge sitting as a general court-martial in Mannheim, Federal Republic of Germany. Contrary to his pleas, he was convicted of possession of cocaine on 15 July 1984 with intent to distribute it, in violation of Article 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 934 (1982). Two charges alleging LSD and hashish offenses on 1 August 1984 were dismissed by the military judge

for lack of speedy trial. Appellant asserts that the cocaine charge should have been dismissed for the same reason. We agree.

## I. Factual Background.

On 15 July 1984, Private First Class Daniel Schuffert, United States civilian Timothy Kusz, and the appellant were apprehended by German customs authorities on a train enroute from Amsterdam to Cologne. Schuffert and Kusz were found in possession of what was later determined to be cocaine, but no drugs were found in the appellant's possession. Kusz remained in German custody where, on 16 July, he confessed his involvement and implicated Schuffert and the appellant. Schuffert and the appellant returned to their units in Mannheim after being processed through the United States Army Criminal Investigation Command (CID) field office in Rheinberg, Germany; that office opened and maintained administrative control of an investigation of the 15 July incident. On 17 July, Schuffert contacted Mannheim CID Agent Watson and made a full confession, implicating the appellant as the organizer and a joint participant in the cocaine purchase and importation scheme. With Schuffert's cooperation, Agent Watson set up a "sting operation" to buy controlled drugs from the appellant. In telephone conversations with Schuffert and Agent Watson, the appellant described his plan to retrieve his share of the cocaine from its hiding place on the train. That retrieval plan was unsuccessful, but the "sting operation" on 1 August led to appellant's apprehension and confinement on 2 August for the resulting LSD and hashish offenses. Charges based on those offenses were preferred on 3 August, but a charge on the cocaine offense was not preferred until 17 September. Appellant was released from confinement and arraigned before a military judge on 21 November.

## II. The Military Judge's Ruling.

The military judge found (1) that, of the 111 days appellant was confined awaiting trial, 14 days were attributed to defense-requested delay and 3 days were attributed to appellant's illness, (2) that there were no extraordinary circumstances permitting an extension of the period beyond 90 days, and (3) that the government had violated Rule for Courts-Martial [RCM] 707(d) by holding appellant in pretrial confinement for more than 90 days for the original charges. The military judge then, and properly we find, dismissed the LSD and hashish charges for which the appellant was originally confined. RCM 707(d) and (e). The military judge found that the cocaine offense was not a factor in the unit commander's decision to confine appellant on 2 August or in the military magistrate's subsequent approval of that confinement. He found that the commander did not possess sufficient information on which to base the cocaine charge until on or about 14 September. The military judge ruled that Charge II (the 15 July cocaine offense) was unaffected by his dismissal of the other charges, and that there were no other violations of appellant's right to a speedy trial.

## III. The Beginning of Government Accountability.

When an accused faces multiple charges preferred at different times and, as in this case, the initial pretrial restraint was based only on the original charges, the proceedings as to each charge must be considered separately for speedy trial purposes. *United States v. Talavera*, 8 M.J. 14 (C.M.A.1979). This principle was adopted in RCM 707(b)(4), which provides that when charges are preferred at different times, government accountability for each runs from the date on which the accused was notified of preferral or on which restraint was imposed on the basis of that offense. While that rule may be properly applied to cases in which the 120-day time limit in RCM 707(a) is in issue, it is not applicable to cases like this one which must meet the 90-day confinement limit in RCM 707(d). While appellant was in confinement on the original charges, he was charged with an additional offense and remained confined until his arraignment. Both parties submit, and we agree, that

**918**

under RCM 707(d) as well as the *Burton*[1] standard, government accountability for speedy disposition of the 15 July cocaine charge begins on the date the government has in its possession substantial information on which to base preferral of that charge. *United States v. Johnson*, 48 C.M.R. 599, 601 (C.M.A.1974). We find that the government possessed such information on or before 2 August 1984, the date of appellant's confinement on the original charges.

### A. Substantial Information

■ The government argues that the quantum of information which triggers its accountability in this case is not merely that which provides probable cause to prefer the cocaine charge, but that which assures successful prosecution of that charge. Such is not the rule of *Johnson* and its progeny. Even if it were, we find that the government had enough evidence before the appellant was confined on 2 August to convict him of the cocaine charge. *See United States v. Tyler*, 17 M.J. 381 (C.M.A.1984); *United States v. Day*, 20 M.J. 213 (C.M.A.1985). On 17 July, Schuffert described to CID Agent Watson, and later to the trial court, the details of the appearance, method of use, effects, testing, circumstances of sale, price, and packaging of the cocaine. Agent Watson described in his 2 August report, and later at trial, conversations in which the appellant acknowledged his relationship with Schuffert and Kusz and his frustrated efforts to retrieve his share of the cocaine. Reports of the laboratory analyses of the cocaine seized from Schuffert and Kusz, reportedly not received by appellant's unit commander until 14 or 15 September and never made a part of the record or otherwise available to this Court, were unnecessary in any event. *United States v. Day*, 20 M.J. 213.

### B. The Government's Possession

■ The government's argument, the trial testimony supporting it, and the military judge's ruling with respect to the cocaine charge, all focus on the information in the possession of appellant's unit commander, implying that information possessed by the CID agents should not be imputed to the "government" in general. The term "government" has not been so narrowly construed that the responsibility for pretrial diligence can be avoided by an accuser's claim of ignorance about CID investigative results. *See e.g., United States v. Johnson*, 48 C.M.R. 599; *United States v. Ward*, 1 M.J. 21 (C.M.A.1975); *United States v. Smith*, 2 M.J. 394 (A.C.M.R.1975). In this case, a CID agent in the city where appellant's commander was located had interviewed and obtained a sworn statement from the key witness, had elicited incriminating statements from the appellant during the course of the "sting operation," and had been in telephone contact with the Rheinberg CID office about the cocaine offense—all before appellant's confinement. No extraordinary circumstances were shown to have impeded the investigative effort or the communication of information between investigators, prosecutors, and commanders. Absent such circumstances, the government's action on an additional offense by a confined accused must be both coordinated and reasonably diligent. In this case, it was neither.

### IV. Excludable Delay.

■ Having found that the appellant was held in pretrial confinement for the cocaine offense in excess of the 90 days allowed by RCM 707(d), we must determine whether the record reveals any delays, other than those identified by the military judge, which are excludable under RCM 707(c). The government, citing *United States v. Driver*, 49 C.M.R. 376 (C.M.A. 1974), argues that a 14-day delay during the Article 32 investigation was for appellant's convenience and benefit and should have been excluded from government accountability. That delay arose when the trial defense counsel objected, during the proceedings on 21 September, to the consideration of Kusz's 16 July statement to Ger-

---

**1.** *United States v. Burton,* 44 C.M.R. 166 (C.M.A. 1971).

man authorities because it appeared on its face to be unsworn. *See* RCM 405(g)(4). Although the investigating officer and one of the CID agents who testified both believed that the statement had been sworn, the investigating officer announced that he would verify the character of the statement before he considered and included it as an exhibit. The stipulated chronology shows that this verification was not accomplished until 5 October. The record before us shows no request for or consent to this delay by the trial defense counsel, but simply his objection to the evidence and his suggestion that the investigating officer consult his legal advisor. Under the circumstances, we find that this delay was not for the appellant's convenience and benefit, *United States v. Driver*, 49 C.M.R. 376, or at the request or with the consent of the defense, RCM 707(c)(3), or because of the unavailability of substantial evidence relevant and necessary to the prosecution's case when the government had exercised due diligence to obtain such evidence, RCM 707(c)(5)(A), or for any other good cause, RCM 707(c)(8). Accordingly, the government was properly held accountable for this delay.

The findings of guilty and the sentence are set aside. The charge is dismissed.

Judge WATKINS and Judge LYMBURNER concur.

UNITED STATES, Appellee,