478

UNITED STATES, Appellee,

v.

James P. NICHOLSON, Hull Maintenance Technician Fireman Apprentice, U.S. Navy, Appellant.

No. 97–1193.
Crim.App. No. 95–2157.

U.S. Court of Appeals for the Armed Forces.

Argued May 13, 1998.

Decided Oct. 1, 1998.

For Appellant: Lieutenant Dale O. Harris, JAGC, USNR (argued).

For Appellee: Lieutenant Janice K. O'Grady, JAGC, USNR (argued); Colonel Charles Wm. Dorman, USMC; Commander D.H. Myers, JAGC, USN; and Lieutenant Commander Christian L. Reismeier, JAGC, USN (on brief).

*Opinion of the Court*

COX, Chief Judge:

Appellant was tried by a military judge sitting alone as a special court-martial convened at Pensacola, Florida, on November 6 and 12–13, 1992.[1] Among other charges,[2] appellant was convicted, contrary to his pleas, of wrongful possession of a controlled substance (marijuana), in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. For all charges of which he was convicted, appellant was sentenced to a bad-conduct discharge, confinement and forfeiture of $523.00 pay per month for 4 months, and reduction to pay grade E–1.

We granted review of the following issue:
WHETHER THE EVIDENCE AT TRIAL WAS LEGALLY SUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WRONGFULLY POSSESSED MARIJUANA AS ALLEGED IN CHARGE VII.

1. Although appellant was tried in 1992, the Court of Criminal Appeals acted on appellant's case on July 24, 1997. Appellant subsequently petitioned this Court for review, which we granted on January 22, 1998.

2. Appellant was convicted, following mixed pleas, on each of the following charges: conspiracy to break restriction, unauthorized absence (2 specifications), disrespect toward a superior commissioned officer (2 specifications), failure to obey a lawful order, wrongful appropriation, assault (2 specifications), disorderly conduct, communicating a threat, breaking restriction, and attempting to break restriction, in violation of Articles 80, 86, 89, 92, 121, 134, and 81, UCMJ, 10 USC §§ 880, 886, 889, 892, 921, 928, 934, and 881, respectively.

## FACTS

Appellant and Seaman Apprentice Tompkins were stationed aboard the USS GALLERY (FFG 26). On the day in question, Tompkins overheard appellant talking with another sailor about some "partying." During that discussion, Tompkins also saw appellant return a plastic bag containing a "brown . . . [l]eafy substance" to his pocket.

The evidence supporting the charge of wrongful possession consisted solely of Tompkins's testimony elicited during trial counsel's direct examination. A portion of this exchange follows:

Q: Do you have any knowledge of the accused possessing marijuana?

A: I'm not for sure if that's what it was.

Q: Could you tell the court what you did see?

A: I saw, I walked up behind him [appellant] and I'm not sure if he actually seen [sic] me, but it was a bag with, I'm not for sure what it was in it.

Q: Please tell the court exactly what you saw?

A: I seen [sic] a bag with something in it, brown, brownish color maybe.

Q: How did you see it, where was it; was it in his hand?

A: In his hand, I walked up and he put it back in his pocket. I really didn't get a good look at it.

* * *

Q: Was it a solid substance, a liquid substance, was it a leafy substance?

A: Leafy substance.

Q: What did you think that substance was?

A: I believe it might have been marijuana.

Tompkins then testified that, during the same conversation, he also overheard appellant mention a female civilian who used marijuana in Pascagoula. At that point during the direct examination, the following exchange occurred between the military judge and Tompkins:

MJ: And so that's what you've been saying. Put two and two in your mind you speculated that what you saw in the bag since you heard a conversation about partying and marijuana was marijuana, is that what you are trying to say?
WITNESS: Yes, sir.

## ANALYSIS

■ The standard of review for legal sufficiency of the evidence is, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Byers*, 40 MJ 321, 323 (CMA 1994), *quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ We hold that insufficient evidence supported appellant's supposed possession of marijuana. The substance allegedly in appellant's possession was never recovered and thus never tested. Tompkins did not testify that he smelled the substance. His testimony was mere speculation, as indicated by the military judge's characterization and Tompkins's own confirmation. Tompkins testified that he saw appellant in possession of a plastic bag containing a brown leafy substance that he thought "might have been marijuana."[3]

Other United States Courts of Appeals have considered what evidence is necessary to establish the identity of a controlled substance by a non-expert witness. The consen-

3. Not all products that are derived from the plant "Cannabis sativa L." are classified as prohibited controlled substances. "The term 'marihuana' means all parts of the plant *Cannabis sativa L.*, whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin. *Such term does not include the mature* *stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks* (except the resin extracted therefrom), *fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.*" 21 USC § 802(16) (1984) [emphasis added].

sus of several circuits is not only that the identity of an illicit substance can be established by circumstantial evidence, but also that the burden is on the Government to prove that identity beyond a reasonable doubt. None of the circuits have held that merely a brief viewing of the substance constituted this level of proof.

The defendant in *United States v. Wright*, 16 F.3d 1429 (6th Cir.1994), had been convicted of conspiracy to distribute cocaine base and possession of cocaine base with intent to distribute. He attacked the conviction based on an argument that the evidence was legally insufficient. The Government had not recovered the substance in question, and thus it was never chemically tested. Circumstantial evidence, however, was presented, and the court concluded that this evidence, combined with the viewing, was legally sufficient to convict. Quoting *United States v. Scott*, 725 F.2d 43, 45–46 (4th Cir. 1984), the court in *Wright* observed that circumstantial evidence which could support identification beyond a reasonable doubt included "the physical appearance of the substance"; evidence that the substance had the expected drug effect; "evidence that the substance was used in the same manner as the illicit drug" in question; evidence that transactions involving the substance were for high prices, paid in cash, and covert; "and evidence that the substance was called by the name of the illegal narcotic" by those in its presence. 16 F.3d at 1439. The court in *Wright* noted that many of these factors were present or satisfied, so the conviction was upheld despite the lack of direct physical evidence. In the instant case, however, there was only one witness's speculation as to the identification of the substance, and his testimony was based solely on a brief glimpse of the matter in question. We choose to apply the principles of *Wright;* thus a mere viewing simply isn't enough.

In *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir.1993), the court considered similar elements of circumstantial evidence discussed in *United States v. Manganellis*, 864 F.2d 528 (7th Cir.1988), which could establish the identity of a substance. These elements included high sales prices; "covert" behavior; remarks by participants which named the substance during a sale; and "lay-experience" of witnesses gained "through prior use, trading, or law enforcement." *See* 864 F.2d at 541. While upholding the conspiracy conviction for other reasons, the court in *Dominguez* concluded that the substance in question was not sufficiently identified because the only direct evidence supporting the identification was "inadmissible hearsay," and the only circumstantial evidence was details of a purchase which could have just as easily supported "a sham" as an authentic drug sale. 992 F.2d at 682, 683 n. 1. Applying *Dominguez* to the instant case, we conclude that none of its criteria were fulfilled; thus the evidence was legally insufficient.

In sum, we hold that mere speculation as to the identity of a substance by one non-expert witness—and nothing more—does not rise to the level of legally sufficient evidence for conviction. No reasonable trier of fact viewing this evidence, even in the light most favorable to the prosecution, could have found the essential elements of wrongful possession beyond a reasonable doubt.

We conclude, however, that due to the numerous other offenses of which appellant was convicted, there was no prejudice as to sentence from his erroneous conviction of this offense.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed as to Charge VII and its specification. The finding of guilty thereon are set aside, and that charge is dismissed. In all other respects, the decision below is affirmed.

Judges GIERKE and EFFRON concur.

SULLIVAN, Judge, with whom CRAWFORD, Judge, joins (dissenting):

Neither Federal case law nor our military case law permits the majority's reversal of appellant's marijuana conviction. *See United States v. Easley*, 70 F.3d 65 (8th Cir.1995); *United States v. Koistinen*, 27 MJ 279, 280 n. 4 (CMA 1988). The majority's reliance on federal cases which affirm drug convictions

on legal sufficiency grounds to reverse in this case is ironic at best. ·*See United States v. Wright*, 16 F.3d 1429 (6th Cir.1994), and *United States v. Dominguez*, 992 F.2d 678 (7th Cir.1993). In my view, Seaman Apprentice Tompkins' testimony in this case fully supports the *factfinder's* decision to find appellant guilty of possession of marijuana. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").

Seaman Apprentice Tompkins' testimony provides the basis for this conviction. He testified:

Q. Do you have any knowledge of the accused possessing marijuana?

A. I'm not for sure if that's what it was.

Q. Could you tell the court what you did see?

A. I saw, I walked up behind him and I'm not sure if he actually seen me, but it was a bag with, I'm not for sure what it was in it.

Q. Was this in the early mid-October time frame?

A. Yes, sir.

Q. Where were you when you saw this?

A. On the barge.

Q. On the barge—is this part of the USS GALLERY?

A. Yes, sir.

Q. What was the accused doing at that time?

A. Standing outside.

Q. And what were you doing at that time?

A. Walking out to smoke a cigarette.

Q. Now where was the accused at this time in relation to you; were you walking up in front of him or behind him?

A. Behind him.

Q. *Please tell the court exactly what you saw?*

A. *I seen a bag with something in it, brown, brownish color maybe.*

Q. *How did you see it; where was it; was it in his hand?*

A. *In his hand, I walked up and he put it back in his pocket. I really didn't get a good look at it.*

Q. Did he take it out of his pocket?

A. I didn't see him take it out of his pocket, but he put it back in so I assumed that maybe—

Q. Could you describe exactly what you saw?

A. You asked me the same question three times and—

Q. *Did you see a plastic bag?*

A. Yes, sir.

Q. *Did you see anything in that plastic bag?*

A. Some substance, brownish in color.

Q. *Was it a solid substance, a liquid substance; was it a leafy substance?*

A. Leafy substance.

Q. *What did you think that substance was?*

A. *I believe it might have been marijuana.*

Q. *Why did you believe that?*

A. Because he had spoke of it before.

DC: Objection.

MJ: Well, given my current state of rulings I will sustain the objection, although again, I can see the Government's problem here, but I will listen to the defense evidence before going—since I was lured in to making the ruling I have made.

Q. *Seaman Apprentice Tompkins, outside anything that you heard prior to that day, prior to that day, why, why did you think that it could be marijuana?*

A. *He had spoke about parties and stuff—*

Q. Is there anything about what you saw in his hand, beside the fact that it was brown and leafy, which made you think it was marijuana?

A. [No response.]

Q. Did the accused say anything at that time about what he had in his hand?

A. No, sir, I didn't ask.

Q. Did the accused notice that you saw him with this?

A. I believe so, I'm not for sure.

Q. Seaman Apprentice Tompkins, do you want to be here today?

A. Not really, sir.

Q. In fact, you told me you were not going to testify, isn't that true?

A. Yes, sir.

TC: Your Honor, I request permission to treat this [sic] as a hostile witness.

MJ: Well, yes, go ahead.

Q. Seaman Apprentice Tompkins, the fact of the matter is that the accused offered to sell you that marijuana, isn't that true?

A. No, sir, he did not.

Q. He discussed with you that it was marijuana and he offered to sell it to you?

A. No, sir, he did not.

Q. Did he tell you where he was getting that marijuana?

A. He did not tell me directly.

Q. *Did he tell you he got it from a female in Pascagoula?*

A. *He did not tell me that; I overheard.*

Q. Didn't you in fact tell MA1 Bilzing—

MJ: Stop right there. What did you overhear?

WITNESS: I overheard him speak with another person.

DC: Sir, I'm going to have to object, we've got hearsay here in addition to him coming up on the violation of the motion *in limine.*

TC: Your Honor—

MJ: Let me—

TC: Sorry.

MJ: *When did you overhear this conversation?*

WITNESS: *On the barge.*

MJ: *In other words, just before walking— or just before seeing this bag, or just after seeing it, or after it was put away or what?*

WITNESS: *Just before.*

MJ: *And what did you hear?*

WITNESS: *Just that there was a civilian female in the Pascagoula area that they had been partying with.*

MJ: *And?*

WITNESS: *And that—I overheard that she, that she was smoking p—marijuana.*

MJ: And was there anything further?

WITNESS: No, sir.

MJ: So I take it that the accused was discussing with somebody else; as you walked up, you heard this conversation?

WITNESS: Yes, sir.

MJ: And so that's what you've been saying. Put two and two in your mind you speculated that what you saw in the bag, since you heard a conversation about partying and marijuana was marijuana, is that what you are trying to say?

WITNESS: Yes, sir.

MJ: Now if the defense any—I think we have avoided whatever the defense was concerned with, but I'll listen to your objections.

DC: Not at this point, sir.

MJ: In other words we're right were [sic] I thought we would be. I don't know what the defense's position is going to be, but if the defense, and of course if the Government hasn't proven that there was a bag or can't prove what was in the bag, it may be available, as I have originally pointed out, for other things, although this certainly seems to me to be proper; go ahead now.

TC: Thank you.

Q. *Seaman Apprentice Tompkins, have you ever seen marijuana before?*

A. *Yes, sir.*

Q. How did you know it was marijuana?

A. [No response.]

Q. *Did you see people smoking marijuana; have you been around marijuana before?*

A. *Yes, sir.*

Q. *And you thought the substance was marijuana to [sic] because it looked like the same stuff you had seen before, right?*

A. *Yes, sir.*

Q. How would you describe the container you saw that marijuana in, when you saw the marijuana with the accused?

A. Clear plastic sandwich bag.

Q. Would you call it anything else?

A. No, sir.

Q. *Would you call it a dime bag?*

A. *Yes, sir.*

Q. *You called it a dime bag before, didn't you?*

A. *From how much it look [sic] like was in there it might have been a dime bag* [unclear what was said].

Q. Seaman Apprentice Tompkins, do you recall engaging in to a discussion about this with MA1 Bilzing present?

A. Yes, sir.

DC: Objection. There is going to be hearsay coming up.

MJ: Where are we going? Is this some sort of prior inconsistent statement? .

TC: Yes, sir.

MJ: Are you trying to elicit further—inconsistent in what general aspect?

TC: Inconsistent from the testimony he's giving today. So it's not offered to prove the truth of the matter, sir; it's offered to prove an inconsistent statement, sir.

MJ: Are we going back to what—the identity; are you trying to go back to this prior conversation about, that the accused, that the witness has answered no several times to any discussion of the sale of marijuana?

TC: Your Honor, I'm going to a conversation which the witness took part in talking about what happened when he saw the accused with something in a green bag and I'm pointed [sic] out that it was inconsistent from what he is giving us today.

MJ: Well, it's not clear enough, I'll sustain the objection.

Q. *Seaman Apprentice Nicholson [sic], the fact is you thought this was a dime bag, didn't you?*

A. *Yes, sir.*

Q. *And you know what a dime bag is?*

A. *Yes, sir.*

Q. *What is a dime bag?*

A. *About $10.00, I guess, probably seven or eight grams, I'm not for sure.*

Q. *So why did you call this thing you saw a dime bag of marijuana?*

A. *Because if it were a dime bag of marijuana, that's approximately what it would look like.*

(Emphasis added.)

In *Wright,* 16 F.3d at 1439, the Sixth Circuit affirmed a conviction based on the circumstantial proof that a certain substance was cocaine. Citing *United States v. Schrock,* 855 F.2d 327, 334 (6th Cir.1988), it rejected an argument similar to the majority's position in this case. *Id.* at 1440–41. In *Schrock,* Senior Judge Celebrezze stated:

> Illegal drugs will often be unavailable for scientific analysis because their nature is to be consumed. As a practical matter, therefore, the evidentiary rule urged by [defendant] would insulate from prosecution a large class of unlawful acts involving illicit drugs when the government happens upon the scene too late to seize a sample of the substance. *To our knowledge, no court has held that scientific identification of a substance is an absolute prerequisite to conviction for a drug-related offense, and we too are unwilling to announce such a rule.* In view of the limitations that such a burden would place on prosecutors, and in accordance with general evidentiary principles, *courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence.* So long as the government produces sufficient evidence, direct or circumstantial, from which the jury is able to identify the substance beyond a reasonable doubt, the lack of scientific evidence is not objectionable.

855 F.2d at 334 (emphasis added; .citations omitted).

Obviously, Seaman Apprentice Tompkins was a reluctant witness, and his testimony was somewhat evasive. His testimony, however, did establish much more than a brief viewing of the substance. It showed that he was familiar with marijuana use and its trafficking; that the brown leafy substance he observed was in a plastic bag; that it looked like marijuana and was packaged in the way that it was usually trafficked; and that appellant was talking about marijuana and acted covertly with respect to it. Under a long line of cases from this Court, this evidence, with every inference from it being drawn in the prosecution's favor, was legally sufficient to show appellant possessed marijuana as charged. *United States v. Koistinen,* 27 MJ 279, 280 n. 4 (CMA 1988); *United States v. Day,* 20 MJ 213 (CMA 1985); *United States*

*v. Tyler*, 17 MJ 381 (CMA 1984); *United States v. LaFontant*, 16 MJ 236 (CMA 1983); *United States v. Jessen*, 12 MJ 122, 126–27 (CMA 1981) (opinion of Everett, C.J.); *United States v. White*, 9 MJ 168 (CMA 1980).

Today the majority treads on dangerous ground and attempts to undercut the power of the factfinder to render a verdict based on circumstantial evidence. I refuse to walk with them as they stray from the firm ground of *Jackson v. Virginia, supra.* I would affirm the conviction and the decision of the appellate court below.